UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
LUIS CARLOS CACERES, GERARDO URGILES LEON, JULIO CESAR CAMBISACA ARCENTALES, and JOFFRE PACA TELENCHANO, individually and on behalf of others similarly situated,

Plaintiffs,

-against-

PASENTI CONSTRUCTION INC. (d/b/a PASENTI CONSTRUCTION), PASENTI CONCRETE INC. (d/b/a PASENTI CONCRETE), PASENTI INC. (d/b/a PASENTI CONSTRUCTION), PASENTI DEVELOPMENT CORP. (d/b/a PASENTI DEVELOPMENT), MARTIN PARENTI, and LOUIS PASCIUTO,

Defendants.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
25-CV-5148 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Luis Carlos Caceres ("Caceres"), Gerardo Urgiles Leon ("Urgiles"), Julio Cesar Cambisaca Arcentales ("Cambisaca"), and Joffre Paca Telenchano ("Paca") (collectively, "Plaintiffs") initiated this action against Pasenti Construction Inc., d/b/a Pasenti Construction; Pasenti Concrete Inc., d/b/a Pasenti Concrete; Pasenti Inc., d/b/a Pasenti Construction; Pasenti Development Corp., d/b/a Pasenti Development (the "Defendant Corporations"); Martin Parenti; and Louis Pasciuto (the "Individual Defendants") (collectively, "Defendants"), on September 12, 2025.[1] *See generally* Compl., ECF 1.

---

[1] Although Plaintiffs styled their case as a class and collective action under Rule 23 and the Fair Labor Standards Act, they have not moved for conditional certification. *See* Compl., ECF 1, ¶¶ 12, 38, 112–20; *see generally* Docket.

Plaintiffs allege various claims, including violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq. Id.* ¶ 11.

On January 30, 2026, the Clerk of Court certified Defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Clerk's Entry of Default, ECF 16. Plaintiff subsequently moved for default judgment on February 10, 2026. Mot. for Default J., ECF 17. For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion be granted and that a default judgment be entered.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background[2]

As alleged in the complaint, the Defendant Corporations are construction companies headquartered in Warwick, New York, doing business as "Pasenti Construction." Compl., ECF 1, ¶¶ 2, 20. The Individual Defendants Martin Parenti and Louis Pasciuto serve or served as owners, managers, principals, or agents of the Defendant Corporations. *Id.* ¶¶ 3, 28. Plaintiffs are former employees of Defendants who worked variously as carpenters, rodbusters, mechanic welders, torch operators, and construction cleaners on a construction project in Brooklyn, New York. *Id.* ¶¶ 1, 4–5.

Plaintiffs allege that they were employed by and performed work for Defendants at various times in 2024 and 2025. Plaintiff Caceres was employed by Defendants as a carpenter from approximately August 24, 2024, to on or about August 1, 2025. *Id.* ¶¶ 15, 39–40. During this time, he worked five days per week, typically 40 hours per week. *Id.*

---

[2] The Court recites the facts as alleged in the complaint. *See, e.g.*, *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021).

¶ 43. However, Plaintiff Caceres did not receive payment for his last two weeks of work. *Id.* ¶ 46. Plaintiff Urgiles was employed by Defendants as a construction cleaner from approximately August 7 to on or about August 8, 2025, *id.* ¶¶ 16, 53–54, and alleges that he did not receive any payment for his two days of work, *id.* ¶ 58. Plaintiff Cambisaca was employed by Defendants as a mechanic welder and torch operator from approximately January 6, 2024, to on or about February 28, 2025; again from approximately March 31, 2025, to on or about April 4, 2025; and finally from approximately May 29, 2025, to on or about June 6, 2025. *Id.* ¶¶ 17, 63–64. In addition to not receiving any pay for his last week of work, *id.* ¶ 71, Plaintiff Cambisaca alleges that he worked 50 hours per week from approximately April 2024 to about September 2024 and was paid a single rate of $45 per hour for all hours worked. *Id.* ¶¶ 68, 70. Plaintiff Paca was employed as a rodbuster by Defendants from approximately July 15, 2025, to on or about August 8, 2025, *id.* ¶¶ 18, 78–79, and did not receive any pay for his last two weeks of work, *id.* ¶ 85. Plaintiffs further allege that during their employment, Defendants never provided them with notification regarding overtime and wages or accurate wage statements. *Id.* ¶¶ 48–50, 59–61, 73–75, 87–89.

Based on these allegations, Plaintiffs bring claims against Defendants for violations of the minimum wage and overtime provisions of the FLSA and NYLL. *Id.* ¶¶ 121–40. Plaintiffs also assert entitlement to spread-of-hours pay under the NYLL. *Id.* ¶¶ 8, 11, 141–44. Plaintiffs further assert that Defendants violated the New York Wage Theft Protection Act. *Id.* ¶¶ 145–52. Finally, Plaintiffs assert that Defendants did not reimburse the costs of purchasing and maintaining equipment required for their jobs, in violation of the FLSA and the NYLL. *Id.* ¶ 154.

**II. Procedural History**

As set forth above, Plaintiffs initiated this action on September 12, 2025. *See generally id.* On September 15, 2025, summons were issued to Defendants. *See* Summons Issued, ECF 3. On September 17, 2025, summons for Defendants Pasenti Construction Inc., Pasenti Development Corp., Pasenti Inc., and Pasenti Concrete Inc. were returned executed, indicating that the Defendant Corporations were all served on September 16, 2025, via the New York Secretary of State, rendering their answers due by October 7, 2025. *See* Affs. of Service, ECF 6, ECF 7, ECF 8, ECF 9. On October 8, 2025, following the Defendant Corporations' failure to timely answer or otherwise appear, the Court extended the Defendant Corporations' time to answer to October 29, 2025, and directed Plaintiffs to provide the Court's extension order to the Defendant Corporations and to file proof of service by October 15, 2025. *See* Oct. 8, 2025 ECF Order. On October 9, 2025, Plaintiffs filed a certificate of service with the Court indicating that they mailed a copy of the Court's extension order via first-class mail to all Defendants on that date. *See* Certificate of Service, ECF 10.

On November 7, 2025, the Court observed that the Defendant Corporations had failed to answer the complaint by the extended deadline and accordingly ordered Plaintiffs to file a status report by November 21, 2025. *See* Nov. 7, 2025 ECF Order. Plaintiffs subsequently filed their status report on November 20, 2025, in which Plaintiffs informed the Court that they had been unsuccessful in serving the Individual Defendants despite making efforts to do so. *See* Status Report, ECF 11. Noting that the deadline to serve the Individual Defendants was December 11, 2025, Plaintiffs requested the Court grant a 30-day extension of time to serve the Individual Defendants such that the deadline would fall on January 12, 2026. *See id.* In addition, Plaintiffs indicated to the Court that they intended to request a certificate of default and to file a

motion for default judgment against the Defendant Corporations, but that they wished to do so after having further time to serve the complaint on the Individual Defendants. *See id.* The Court granted Plaintiffs' request on November 21, 2025, thereby extending the deadline to serve the Individual Defendants to January 12, 2026. *See* Nov. 21, 2025 ECF Order. The Court also ordered Plaintiffs to file another status report by January 19, 2026. *See id.*

On December 4, 2025, summons for the two Individual Defendants were returned executed, indicating that Louis Pasciuto was served on December 2, 2025, and that Martin Parenti was served on December 3, 2025, via a process server who left the summons with an individual named Jessica Pasciuto, "a person of suitable age and discretion," who resides at an address that appears to be associated with Louis Pasciuto, if not others.[3] *See* Affs. of Service, ECF 12, ECF 13. The Individual Defendants' answers were thus due by December 23 and December 24, 2025, respectively.

On January 19, 2026, Plaintiffs filed a second status report, in which they informed the Court that they would soon file requests for certificates of default and a motion for default judgment in light of Defendants' collective failure to respond to the complaint. *See* Status Report, ECF 14. The next day, the Court directed Plaintiffs to initiate default motion practice by February 10, 2026. *See* Jan. 20, 2026 ECF Order.

Plaintiffs filed their request for certificates of default as to all Defendants on January 28, 2026. *See* Req. for Certificate of Default, ECF 15. On January 30, 2026, the Clerk of Court entered default for each Defendant. *See* Clerk's Entry of Default, ECF 16.

---

[3] As discussed below, the Court has raised concerns about the initial service as to Defendant Parenti. *See* Aff. of Service, ECF 12 (representing that service as to Martin Parenti was made by providing the summons with "Jessica Pasciut [sic]," who was described as a "co-resident").

Plaintiffs then filed their motion for default judgment on February 10, 2026. *See* Mot., ECF 17. The following day, Plaintiffs filed a certificate of service certifying that they mailed copies of the motion and its accompanying papers to Defendants, and on February 11, 2026, the Honorable Rachel P. Kovner referred the motion to the undersigned Magistrate Judge for a report and recommendation. *See* Certificate of Service, ECF 20; Feb. 11, 2026 ECF Order Referring Mot.

On February 13, 2026, the undersigned Magistrate Judge entered a scheduling order reminding Plaintiffs of their need to establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1 and 55.2. *See* Feb. 13, 2026 ECF Scheduling Order. In that scheduling order, the Court directed Plaintiffs to file (1) an affidavit or declaration showing Plaintiffs' compliance with E.D.N.Y. Local Civil Rule 55.2(a)(1)(C) and 55.2(a)(1)(B); (2) a "proposed order detailing the proposed judgment to be entered" as required by E.D.N.Y. Local Civil Rule 55.2(a)(2); and (3) an evidentiary declaration detailing the manner in which the addresses for Defendants were ascertained by February 27, 2026. *See id.* The Court also scheduled a default motion hearing for March 11, 2026. *Id.* The Court directed the Clerk of Court to send a copy of the scheduling order and a separate notice to Defendants at their addresses of record.[4] *See id.*; Notice to Defs., ECF 21.

On February 26, 2026, Plaintiffs filed a series of affidavits to demonstrate their compliance with the applicable local rules. *See* Jun Affirmation, ECF 22; Caceres Aff., ECF 23; Cambisaca Aff., ECF 24; Urgiles Aff., ECF 25. Plaintiffs supplemented these filings by submitting an additional affidavit on March 11, 2026, in which they provided

[4] The Court notes that these mailings were later returned as undeliverable as to the Corporate Defendants. *See* Mail Returned Undeliverable, ECF 29; *see also infra* note 7.

new information about possible known addresses of Martin Parenti. *See* Jun Affirmation, ECF 26.

The Court held a telephonic default motion hearing on March 11, 2026. *See* Mar. 11, 2026 ECF Min. Entry & Order. Only Plaintiffs appeared at the hearing. *See id.* During the proceedings, Plaintiffs and the Court discussed how Plaintiffs determined the addresses to serve the complaint, summons, and the motion for default judgment on Defendants. *See id.* The Court also directed Plaintiffs to serve Defendants with all of the default motion paperwork at the Defendant Corporations' last known business address and at the Individual Defendants' last known residential addresses by March 18, 2026. *See id*. Furthermore, in light of Defendants' failure to appear in the case and their absence from the default motion hearing, the Court notified the parties that it would take Plaintiffs' motion under advisement upon the receipt of the supplemental filing due by March 18. *See id.*

On March 13, 2026, Plaintiffs filed a certificate of service indicating that they had on the same day sent copies of their affidavits filed on February 26, 2026, to the Defendant Corporations and Defendant Pasciuto via first-class mail. *See* Certificate of Service, ECF 27. Also on March 13, 2026, Plaintiffs filed a certificate of service showing that they had on the same day sent copies of the certificate of default, the motion for default judgment, the motion's accompanying papers, and Plaintiffs' affidavits filed on February 26, 2026, to two residential addresses associated with Martin Parenti via first-class mail. *See* Certificate of Service, ECF 28; *see also* Jun Affirmation, ECF 26 (providing LexisNexis public record search for Defendant Parenti indicating two addresses associated with him in the 2015–2018 time frame).

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b)(2); *see* E.D.N.Y. Loc. Civ. R. 55.2(c). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[5] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

---

[5] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiffs' motion papers substantially comport with these rules. First, Plaintiffs requested certificates of default in accordance with Local Rule 55.1(a)(1), which were served on Defendants via first-class mail. *See* Req. for Certificates of Default, ECF 15; Certificate of Service, ECF 15-7. The Court notes that at the time the certificates of default were first served on Defendants, Plaintiffs used the same mailing address for both Individual Defendants. *See* Certificate of Service, ECF 15-7, at ECF p. 2. However, on March 13, 2026, Plaintiffs certified that they sent the certificate of default to Defendant Parenti at two more addresses linked to him according to public records. *See* Certificate of Service, ECF 28; Jun Affirmation, ECF 26 (describing Plaintiffs' process for locating the addresses). Second, Plaintiffs have demonstrated that Defendants have failed to defend the action and that the pleadings were properly served. *See* Affs. of Service, ECF 6, ECF 7, ECF 8, ECF 9 (demonstrating that the pleadings were properly served on the Defendant Corporations); Certificate of Service, ECF 13 (same as to

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "[p]laintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *J & J Sports Prods., Inc. v. Ahuachapan*

---

Defendant Pasciuto); Certificate of Service, ECF 28 (same as to Defendant Parenti); *see generally* Docket. The Court notes in regard to Defendant Parenti that the summons and complaint were served on him by leaving the documents with an individual named Jessica Pasciuto, who was identified as a co-resident of both Individual Defendants. *See* Aff. of Service, ECF 12. Third, Plaintiffs demonstrated that the Individual Defendants are not minors, incompetent, or subject to the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3931. Jun Affirmation, ECF 22, ¶ 1; Ex. 1, SCRA Report, ECF 22-1; *see also generally* Caceres Aff., ECF 23; Cambisaca Aff., ECF 24; Urgiles Aff., ECF 25. Finally, Plaintiffs have certified the mailing of all of the default motion papers to Defendants' last known business and/or residential addresses, in accordance with Local Rule 55.2(a)(3). *See* Certificates of Service, ECF 20, ECF 27, ECF 28.

*Corp.*, 422 F. Supp. 3d 652, 663 (E.D.N.Y. 2019) (citing *CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015); *Action S.A.*, 951 F.2d at 508); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Specific to FLSA and NYLL cases, "in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *2 (E.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002). Here, Plaintiffs seek $13,270.00 in compensatory damages under the FLSA and the NYLL; $13,270.00 in liquidated damages; pre- and post-judgment interest; $30,600.00 in statutory damages for wage notice and wage statement violations under the NYLL; and attorneys' fees and costs in the amount of $4,105.00 and $1,203.00, respectively. *See* Proposed J., ECF 22-8; *see also generally* Mem., ECF 19. For the following reasons, the Court recommends entry of a default judgment in Plaintiffs' favor and an award of damages, interest, and attorneys' fees and costs, as detailed below.

**II. Entry of Default**

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of a

default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.* ("*Duce Constr. Corp.*"), No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of default judgment is appropriate.

**A. Willfulness**

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81. In this case, Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness.

Plaintiffs adequately served the Defendant Corporations by delivering the summons and complaint to the New York Secretary of State, as permitted by New York state law. *See* Affs. of Service, ECF 6, ECF 7, ECF 8, ECF 9; N.Y. Bus. Corp. Law

§ 306(b)(1); Fed. R. Civ. P. 4(e)(1) & (h)(1); *see also Jean-Louis v. Warfield*, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State).

Plaintiffs also adequately served Defendant Pasciuto by serving copies of the summons and complaint to him at his dwelling, *i.e.*, (1) by providing the papers to a woman who identified herself as a co-resident of Defendant Pasciuto and accepted service of the summons and complaint at 71 Eagle Crest Way, Chester, NY 10918, and (2) by mailing copies of the summons and complaint to Defendant Pasciuto at his last known address. Aff. of Service, ECF 13; *see* Fed. R. Civ. P. 4(e)(2)(B) (stating that an individual may be served in a judicial district of the United States by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"); *see also Dominguez v. Hernandez*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2575224, at *7 (E.D.N.Y. Feb. 22, 2023) ("The process server must provide information in the affidavit of service that establishes the ground for believing that the person, other than the defendant, who received the service satisfies the requirement of [Rule 4(e)(2)(B)], including that the person resides at that address.").

Initially, the Court had concerns as to whether Plaintiffs effectuated adequate service on Defendant Parenti because the summons and complaint for Parenti was served upon an individual identified as "Jessica Pasciut [sic]," who was identified as a co-resident for both Defendant Parenti and Defendant Pasciuto at 71 Eagle Crest Way, Chester, NY 10918. Aff. of Service, ECF 12; *see* Aff. of Service, ECF 13. At the default hearing on March 11, 2026, the Court ordered that additional measures be taken to notify Defendant Parenti of these proceedings pursuant to Local Rules 55.1(a)(4) and 55.2(a)(3). Mar. 11, 2026 ECF Min. Entry & Order. On March 13, 2026, Plaintiffs certified

that they had mailed the certificate of default and accompanying papers to two additional addresses associated with Parenti on public records. *See* Certificate of Service, ECF 28; Jun Affirmation, ECF 26.[6]

Defendants failed to respond within 21 days of service. *See* Oct. 8, 2025 ECF Order; *see generally* Docket. Defendants likewise failed to respond after Plaintiffs moved for default judgment and after they were sent notice of the motion by Plaintiffs and notice of the default motion hearing by the Clerk of Court.[7] *See* Certificate of Service, ECF 20; Feb. 13, 2026 ECF Scheduling Order; Notice to Defendants, ECF 21; *see also* Mar. 11, 2026 ECF Min. Entry & Order (indicating that there was no appearance on Defendants' behalf at the default motion hearing). In light of Defendants' failure to

---

[6] The Court further notes that insufficient service of process is a waivable defense and the Court "need not determine whether a court should be considering the many affirmative defenses that a defendant could have waived had it appeared . . . and thus arguably did waive by not appearing." *Choi v. 37 Parsons Realty LLC*, 642 F. Supp. 3d 329, 338 n.6 (E.D.N.Y. 2022) (citing *Kaplan v. Hezbollah*, No. 19-CV-3187 (BMC) (ST), 2022 WL 2207263, at *2 (E.D.N.Y. June 21, 2022)); *see* Fed. R. Civ. P. 12(b)(5).

[7] In addition to Plaintiffs' mailings to Defendants, the Court sent a default hearing notice and a copy of the docket to the following addresses: (1) Pasenti Construction Inc. (d/b/a Pasenti Construction), 68 West Street, Warwick, NY 10990; (2) Pasenti Concrete Inc. (d/b/a Pasenti Concrete), 68 West Street, Warwick, NY 10990; (3) Pasenti Concrete Inc. (d/b/a Pasenti Concrete), 1407 Kings Hwy, #219, Sugar Loaf, NY 10981; (4) Pasenti Inc. (d/b/a Pasenti Construction), 68 West Street, Warwick, NY 10990; (5) Pasenti Inc. (d/b/a Pasenti Construction), 1407 Kings Hwy, #219, Sugar Loaf, NY 10981; (6) Pasenti Development Corp. (d/b/a Pasenti Development), 68 West Street, Warwick, NY 10990; (7) Martin Parenti, 71 Eagle Crest Way, Chester, NY 10918; and (8) Louis Pasciuto, 71 Eagle Crest Way, Chester, NY 10918. *See* Feb. 13, 2026 ECF Scheduling Order. On April 6, 2026, the Court mailing sent to Defendant Pasenti Development Corp. was returned as undeliverable, as the time to forward mail had expired. *See* Mail Returned Undeliverable, ECF 29 (suggesting that the mail forwarding address for Defendant Pasenti Development Corp. is P.O. Box 640, Warwick, NY 10990-0640). The Court mailings sent to the other Defendant Corporations were returned as undeliverable and unable to forward on April 6, 2026. *Id.* No such notices of undeliverability were received for the Individual Defendants. *See generally* Docket. Given that the Court's mailings are sent as a courtesy to defaulting defendants, to supplement any notice provided by Plaintiffs, and for the reasons discussed herein, the Court finds that the Defendant Corporations have been provided legally sufficient notice, even if the mailings to the Defendant Corporations have been returned to the Court.

respond, notwithstanding the repeated provision of notice regarding this proceeding, the Court weighs this factor in favor of default as to all Defendants.

**B. Meritorious Defense**

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. *See generally* Docket. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

**C. Prejudice**

"The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Jan. 29, 2009 Endorsement, ECF 18). In light of Defendants' failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Duce Constr. Corp.*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

Accordingly, all three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment.

**III. Liability and Damages**

**A. Coverage Under the FLSA**

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (quotation marks omitted), *report and recommendation adopted*, Sept. 12, 2018 ECF Order Adopting R. & R.

*1. Employers Subject to the FLSA*

An employer is subject to the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007). A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Here, the Court finds that Plaintiffs have adequately alleged that the Defendant Corporations are "[e]nterprise[s] engaged in commerce" and therefore subject to the FLSA. 29 U.S.C. § 203(s)(1). Specifically, Plaintiffs allege that the Defendant Corporations, "both separately and jointly, had a gross annual volume of sales of not less than $500,000," Compl., ECF 1, ¶ 35, and "were directly engaged in interstate commerce," as "numerous items that were used daily at Defendants construction companies . . . were produced outside the state of New York," *id.* ¶ 36.

Although Plaintiffs' allegations are somewhat conclusory, courts have noted that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quotation marks omitted); *see Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022) (noting that "multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce") (collecting cases), *report and recommendation adopted*, Sept. 23, 2022 ECF Order Adopting R. & R.; *see also Jacobs*, 577 F.3d at 99 n.7. In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 97 F. Supp. at 530. Here, the Court may safely infer that such goods and materials were used in the operations of the Defendant Corporations and that, accordingly, Plaintiffs were employed by enterprises engaged in commerce. *See Romanowicz*, 577 F.3d at 84 ("In light of [a defendant's] default, a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL

211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding that employer was engaged in interstate commerce where it was "simply inconceivable that none of the [goods] used" in its business "originated outside of New York"). Given the nature of the Defendant Corporations' construction business, the Court finds that Plaintiffs' allegations are sufficient to establish that they were subject to the FLSA.

With respect to the Individual Defendants, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the statute, a "person" may be an "individual" or "any organized group of persons." 29 U.S.C. § 203(a). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-0451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016) (citation omitted), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated by stipulation on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018).

Here, Plaintiffs allege that the Individual Defendants "possess[] or possessed operational control over Defendant Corporations, possess[] or possessed an ownership interest in Defendant Corporations, and control[] or controlled significant functions of Defendant Corporations." Compl., ECF 1, ¶¶ 25–26. Moreover, as alleged in the complaint, the Individual Defendants "had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of compensation in exchange for their services." *Id.* ¶ 34. Plaintiffs further allege that the Individual Defendants "determined the wages and compensation" and "established the schedules of the employees," including Plaintiffs, "maintained

employee records, and had the authority to hire and fire employees." *Id.* ¶¶ 25–26. Taking these allegations as true in the context of this default motion, the Court finds that Defendants collectively were employers subject to the FLSA. *See, e.g.*, *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

*2. Employees Covered by the FLSA*

Under the FLSA, an "employee" generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see generally id.* § 203(e). "In light of [this] broad definition . . . , the Second Circuit has found allegations which simply 'state where the plaintiffs worked, outline their positions, and provide their dates of employment,' sufficient to support a finding of employee status." *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015) (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013)).

Here, Plaintiffs allege that they were employed by the Individual Defendants to work for the Defendant Corporations "as carpenters, rodbusters, mechanic welders, torch operators[,] and construction cleaners," Compl., ECF 1, ¶ 37, and that Defendants "had the authority to hire and fire" Plaintiffs, "determined [their] wages and compensation," and "established [their] schedules," *id.* ¶¶ 25, 26; *see* Mem., ECF 19, at 4. "It follows, therefore, that for purposes of this default, [Plaintiffs] qualif[y] as . . . 'employee[s]' under the FLSA." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014).

*3. FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). As noted above, Plaintiffs allege that they were employed to

work as "carpenters, rodbusters, mechanic welders, torch operators[,] and construction cleaners." Compl., ECF 1, ¶ 37. They further allege that these positions "required neither discretion nor independent judgment." *Id.* ¶¶ 42, 56, 66, 81. These are not positions of employment contemplated by any of the statutory exemptions. 29 U.S.C. § 213(a); *see also* Mem., ECF 19, at 5–9 (describing Plaintiffs' job duties). For the purposes of this default motion, Plaintiffs have therefore adequately alleged facts establishing applicability of the FLSA as a predicate to their claims under the statute.

**B. Coverage Under the NYLL**

To recover under the NYLL, a plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (alteration in original) (quotation marks omitted) (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *vacated and remanded on other grounds*, 811 F.3d 528 (2d Cir. 2016); *see Ethelberth*, 91 F. Supp. 3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's). Having already found that Plaintiffs have sufficiently pleaded that Defendants were employers and that Plaintiffs were their employees under the FLSA, the Court finds that Plaintiffs have also adequately alleged an employment relationship with Defendants under the NYLL.

**C. Violations of the FLSA and the NYLL**

Having determined that Plaintiffs and Defendants are covered by the FLSA and the NYLL, the Court must now decide whether Plaintiffs have adequately pleaded Defendants' liability. As a preliminary matter, the Court notes that Plaintiffs' claims fall within the relevant statutes of limitation. *See* 29 U.S.C. § 255(a) (two years for ordinary

FLSA violations; three years for "willful" violations); NYLL § 198(3) (six years).[8] As discussed above, Plaintiffs claims accrued beginning, at the earliest, in January 2024,[9] and they filed this case less than two years later, in September 2025. *See generally* Compl., ECF 1.

Plaintiffs allege that Defendants are liable for (1) violations of the FLSA and the NYLL's minimum wage provisions, (2) violations of the FLSA and the NYLL's overtime provisions, and (3) violations of the New York Wage Theft Protection Act's wage notice and statement requirements.[10] *See generally id.*

---

[8] The Court notes that Plaintiffs allege willful violations of the FLSA by Defendants. *See* Compl., ECF 1, ¶ 93 ("Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL by not paying Plaintiffs the wages required by these laws."). Willful FLSA claims present a higher pleading burden than ordinary FLSA claims but allow plaintiffs to take advantage of a three-year statute of limitations. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–25 (2d Cir. 2021) (discussing 29 U.S.C. § 255). As stated above, Plaintiffs filed their claims within the two-year statute of limitations for ordinary FLSA claims. The Court therefore need not assess whether Plaintiffs have adequately established willfulness "as an independent element of [their] claims." *Id.* at 322.

[9] The complaint alleges that Plaintiff Cambisaca was first employed by Defendants "from approximately January 6, 2024," Compl., ECF 1, ¶ 63, that Plaintiff Caceres was first employed by Defendants "from approximately August 24, 2024," *id.* ¶ 39, that Plaintiff Paca was first employed by Defendants "from approximately July 15, 2025," *id.* ¶ 78, and that Plaintiff Urgiles was first employed by Defendants "from approximately August 7, 2025," *id.* ¶ 53.

[10] In the complaint, Plaintiffs also alleged that "Defendants failed to pay Plaintiffs the required 'spread of hours' pay for any day in which they had to work over 10 hours a day." Compl., ECF 1, ¶ 8; *see also id.* ¶¶ 11, 142–43; *id.* at 26–27 (prayer for relief requesting award of damages for spread-of-hours pay under NYLL and liquidated damages related thereto). Under the NYLL spread-of-hours provision, employees who make minimum wage or less are entitled to an additional hour of pay at the prevailing minimum wage for every day they work more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("An employee shall receive one [additional] hour's pay at the basic minimum hourly wage rate . . . for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."). "A

*1. Unpaid Wage Violations*

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. *See* 29 U.S.C. § 206(a); NYLL § 652. And where "a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award damages under the statute providing the greatest amount of relief." *Payamps*, 2019 WL 8381264, at *11 (quotation marks omitted). Under the NYLL, employees "have the right to recover full wages, benefits and wage supplements . . . accrued during the six years previous to the commencing of such action." NYLL §§ 198(3), 191(1)(a)(ii) (mandating that manual workers be paid "in accordance with the agreed terms of employment"); *Hernandez v. NJK Contractors, Inc.*,

---

limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015); *see also Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 294 (E.D.N.Y. 2024) (finding that plaintiffs were entitled to spread-of-hours pay for the period in which plaintiffs were paid less than minimum wage); *Guadalupe v. Tri-State Emp., Mgmt. & Consulting, Inc.*, No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (deferring to the New York Department of Labor's interpretation that spread-of-hours pay is not available to employees whose compensation exceeds minimum wage). The complaint fails to allege that, for any plaintiff at any time, (1) payment received or owed was equal to or less than minimum wage and (2) "the spread of hours exceed[ed] 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; *see Fermin*, 93 F. Supp. 3d at 45; *see generally* Compl., ECF 1. Moreover, the spread of hours cause of action is not substantively renewed in the motion for default judgment and accompanying papers. *See* Mot., ECF 19, at 11 (requesting "damages for . . . spread of hours . . . violations" but failing to substantiate the claim with facts as alleged); Damages Chart, ECF 18-4, at 2 (providing a figure under "Unpaid Spread of Hours (SOH) Pay" for Cambisaca but failing to explain or substantiate the calculation based on the facts as alleged). The Court therefore does not consider spread-of-hours violations in its analysis or damages calculation.

Plaintiffs also alleged that "Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and 'tools of the trade' required to perform their jobs." Compl., ECF 1, ¶ 154; *see also id.* ¶¶ 52, 77, 91; *id.* at 25 (prayer for relief requesting compensation for damages including "improper deductions or credits taken against wages"). However, the cause of action related to recovery of equipment costs was not renewed by Plaintiffs in their motion for default judgment and accompanying papers, and the Court deems the claim abandoned. *See* Mot. for Default J., ECF 17; Damages Chart, ECF 18-4; Mem., ECF 19. Accordingly, equipment costs are not considered by the Court in its analysis or damages calculation.

No. 09-CV-4812 (RER), 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) ("Employers are required to pay employees their wages that are earned."). The NYLL "expressly provides that employees are entitled to recover all unpaid wages," not just a minimum hourly wage. *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011); *see, e.g.*, *Calle v. Yoneles Enters., Inc.*, No. 16-CV-1008 (NGG) (RLM), 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017) (finding that a plaintiff "can recover for unpaid 'straight' time at the agreed-upon rate, even if it exceeds minimum wage"), *report and recommendation adopted*, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018). Therefore, "a plaintiff who prevails on a cause of action under the state law is entitled to the full amount of wages owed, not just the statutory minimum wage for the hours worked." *Chun Jie Yin v. Kim*, No. 07-CV-1236 (DLI) (JO), 2008 WL 906736, at *4, *6 (E.D.N.Y. Apr. 1, 2008) (awarding damages in the full amount of the plaintiff's unpaid wages at plaintiff and defendant's "agreed upon wage"); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-5418 (NJC) (JMW), 2024 WL 2923945, at *3 (E.D.N.Y. May 21, 2024) (awarding unpaid wages damages to the plaintiff at "the rate she was entitled to be paid"), *report and recommendation adopted*, 2024 WL 2891798 (E.D.N.Y. June 10, 2024).

As discussed above, if not rebutted by the defendant, a plaintiff's "recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin*, 2009 WL 289653, at *3. "The Second Circuit has expressly endorsed this approach" if the district court ensures "'that there was a basis for the damages specified in the default judgment.'" *Santillan*, 822 F. Supp. 2d at 293 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted)).

Here, Plaintiffs allege that Defendants "failed to pay Plaintiffs . . . at the applicable minimum hourly rate" during their periods of employment, in violation of

the FLSA and NYLL. Compl., ECF 1, ¶¶ 125, 134. Specifically, as alleged in the Complaint, Defendants failed to pay (1) Plaintiff Caceres "for his last two weeks of work," *i.e.*, approximately 80 hours, *id.* ¶¶ 43, 46, (2) Plaintiff Urgiles "for his two days of work," *i.e.*, approximately 16 hours,[11] *id.* ¶¶ 57, 58, (3) Plaintiff Cambisaca "for his last week of work," *i.e.*, approximately 40 hours, *id.* ¶¶ 67, 71, and (4) Plaintiff Paca "for his last two weeks of work," *i.e.*, approximately 80 hours, *id.* ¶¶ 82, 85. Given these allegations, Plaintiffs have sufficiently shown that their regular rate of pay fell below the applicable minimum wage rate during the relevant periods of their employment, in violation of both the FLSA and the NYLL. Further, as discussed above, under the NYLL, Plaintiffs are entitled to recover the full amount of the wages they are owed, not just the minimum wage. *Chun Jie Yin*, 2008 WL 906736, at *4. Given that Plaintiffs Caceres, Cambisaca, and Paca have alleged that Defendants agreed to pay each Plaintiff at an hourly rate for their work ($28, $45, and $34, respectively), they are entitled to unpaid wages calculated by multiplying each Plaintiff's unpaid hours of work by their agreed upon hourly rate. *See* Compl., ECF 1, ¶¶ 45, 70, 84. Plaintiff Urgiles does not allege an hourly rate agreed upon with Defendants and is thus entitled to unpaid wages calculated by multiplying his hours of work by the applicable New York State

[11] The complaint alleges that "[f]rom approximately August 7, 2025 until on or about August 8, 2025," *i.e.*, two days, "Plaintiff Urgiles worked from approximately 7:00 a.m. until on or about 3:30 p.m. five days a week (typically 40 hours per week)." Compl., ECF 1, ¶ 57. The Court notes the impossibility of Plaintiff Urgiles having worked both two days and "five days a week." *Id.* For the purposes of calculating damages, the Court assumes an eight-hour workday, based on the allegations in the complaint. *See id.*

minimum wage, or $16.50 per hour.[12] Accepting the allegations in the complaint as true, the Court recommends finding that (1) Plaintiff Caceres is entitled to **$2,240.00** in unpaid hourly wages (80 hours x $28/hour); (2) Plaintiff Urgiles is entitled to **$264.00** in unpaid hourly wages (16 hours x $16.50/hour); (3) Plaintiff Cambisaca is entitled to **$1,800.00** in unpaid hourly wages (40 hours x $45/hour); and (4) Plaintiff Paca is entitled to **$2,720.00** in unpaid hourly wages (80 hours x $34/hour). *See id.* ¶¶ 45, 70, 84.

2. *Overtime Violation*

Plaintiffs allege that Defendants violated the FLSA and the NYLL by failing to pay them overtime wages for hours worked in excess of 40 hours per week. *Id.* ¶¶ 6, 10–11, 129, 138. Accepting Plaintiffs' factual allegations as true, the Court recommends finding that Defendants' default amounts to an admission of liability for violating the overtime provisions of the FLSA and NYLL as to Plaintiff Cambisaca, but not as to Plaintiffs Caceres, Urgiles, or Paca.

Under both statutes, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA.). Accordingly, to establish liability under the FLSA for an unpaid overtime claim, the

---

[12] *See* History of the Minimum Wage in New York State, N.Y. STATE DEP'T OF LAB., available at https://dol.ny.gov/history-minimum-wage-new-york-state (last visited July 29, 2026) [https://perma.cc/LVN7-35NP]. The applicable minimum wage for New York City, where Plaintiffs were allegedly employed, *see* Compl., ECF 1, ¶ 5, was $16.50 per hour in 2025, when the wage violations with respect to Plaintiff Urgiles are alleged to have occurred.

"plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Plaintiff must also show "that the[ir] employer had actual or constructive knowledge" of their overtime hours. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

Here, Plaintiffs allege that the Individual Defendants "established the schedules of the employes," indicating that Defendants had actual knowledge of Plaintiffs overtime hours. Compl., ECF 1, ¶¶ 25, 26; *see Kuebel*, 643 F.3d at 361. Only Plaintiff Cambisaca alleges working more than 40 hours per week, and only for the period of April through September 2024, as opposed to his entire employment. *See* Compl., ECF 1, ¶ 68; *see also id.* ¶¶ 43, 57, 82 (averring that Plaintiffs Caceres, Urgiles, and Paca worked "typically 40 hours per week"). Accordingly, the Court recommends denying the claims for overtime violations as to Plaintiffs Caceres, Urgiles, and Paca.

Because Plaintiff Cambisaca has already been paid the regular rate for all hours worked during this time period, the overtime wage deficiency is calculated by multiplying the difference between his regular hourly rate and the overtime wage rate (his hourly rate times 1.5) by the total number of overtime hours worked. *See, e.g.*, *Kim v. J&J Safetymate Corp.*, No. 22-CV-1070 (TAM), 2025 WL 1384135, at *5 (E.D.N.Y. May 13, 2025); *Perez Campos v. Quentin Market Corp.*, No. 16-CV-5303 (DLI) (RER), 2018 WL 9945754, at *7–8 (E.D.N.Y. Oct. 17, 2018), *report and recommendation adopted*, Mar. 31, 2019 ECF Order Adopting R. & R. Plaintiff Cambisaca claims that he worked "Mondays through Fridays (typically 50 hours per week)," amounting to approximately 10 hours per day, "[f]rom approximately April 2024 until [] about September 2024." Compl., ECF

1, ¶ 68.[13] This amounts to 10 hours of overtime each week. Plaintiff Cambisaca further states that he was paid "$45 per hour for all the hours he worked." *Id.* ¶ 70. Accordingly, the Court finds that Plaintiff Cambisaca is entitled to **$5,850.00** in compensatory damages for his overtime wage deficiency, as set forth below.

| **Period Date Range** | **Number of Weeks** | **Regular Rate of Pay** | **Overtime Rate of Pay (Regular Rate x 1.5)** | **Pay Differential** | **Overtime Hours Worked (Weeks x 10 Hours per Week)** | **Overtime Wage Total** |
|---|---|---|---|---|---|---|
| 04/01/24 – 09/30/24 | 26 | $45.00 | $67.50 | $22.50 | 260 | $5,850.00 |

3. *New York Wage Theft Protection Act Violations*

Plaintiffs also request a default judgment with respect to Defendants' alleged violations of the NYLL's wage notice and statement requirements, which were codified as part of the New York Wage Theft Protection Act ("WTPA"). *See* NYLL §§ 195(1), 195(3). Under these provisions, an employer must provide its employees (1) "written notice of their rate, how it will be paid ('by the hour, shift, day, week, salary, piece, commission or other'), allowances[] ('including tip') and the employer's address and contact information," and (2) "'a statement of every payment of wages.'" *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM) (SIL), 2025 WL 1808694, at *11 (E.D.N.Y. July 1, 2025) (quoting NYLL §§ 195(1), 195(3)). An employer who fails to provide the

[13] In the absence of greater specificity in either the complaint or the papers accompanying Plaintiffs' motion, the Court calculates the overtime period from April 1 to September 30, 2024. *See* Compl., ECF 1, ¶ 68; Cambisaca Decl., ECF 19-4, ¶ 8; *see generally* Mem., ECF 19. While the span from April 1, 2024, to September 30, 2024, is approximately 26.14 weeks, for the purposes of this default motion, the Court adopts the methodology used by Plaintiffs and bases its calculations on 26 weeks. *See* Damages Chart, ECF 18-4.

required notices and statements is liable for statutory damages. *See* NYLL §§ 198(1-b), 198(1-d).

Plaintiffs must establish Article III standing with respect to their wage notice and statement claims. *See Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 302–03, 304 (2d Cir. 2024) (analyzing Article III standing in the context of NYLL wage notice and statement claims); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (noting that the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right'" (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 300, 341 (2016))). To establish standing, a plaintiff must have "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (alteration in original) (quoting *Spokeo*, 578 U.S. at 338).

For claims brought under the WTPA, the alleged concrete injury-in-fact must "result[] from the failure to provide the wage notices and wage statements to maintain a claim for statutory damages under" NYLL § 195. *Guthrie*, 113 F.4th at 302–03. Further, in the wake of *Guthrie*, courts in this Circuit have found that "[p]laintiffs sufficiently establish Article III standing when they allege that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment." *Rosas v. M & M La Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG) (MMH), 2024 WL 4131905, at *12 (E.D.N.Y. Sept. 10, 2024), *report and recommendation adopted*, Sept. 30, 2024 ECF Order Adopting R. & R.; *see also Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases); *Zambrano*, 2025 WL 1808694, at *12–13 (granting summary judgment for the plaintiffs on wage statement and notice claims).

Here, as alleged in the complaint, "[n]o notification, either in the form of posted notices or other means, was ever given" to Plaintiffs "regarding overtime and wages under the FLSA and NYLL." Compl., ECF 1, ¶¶ 48, 59, 73, 87. Plaintiffs also assert that Defendants' failure to provide required wage notices and accurate wage statements prevented each of them from: "(i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him." *Id.* ¶¶ 51, 62, 76, 90. As to Plaintiff Cambisaca, the Court finds that these allegations plausibly plead "some causal connection between the lack of accurate notices and the downstream harm." *Guthrie*, 113 F.4th at 308.

Although Plaintiffs' allegations are somewhat conclusory, based on the facts in the complaint, it is plausible that, had Cambisaca properly received wage statements and notices, he would have realized sooner that he was not being paid the overtime that he was owed for hours he worked over 40 in a workweek and taken corrective action. *See* Compl., ECF 1, ¶¶ 68, 73 76 (alleging that "[a]s a result of Defendants' failure to provide Plaintiff Cambisaca with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from . . . realizing that he was underpaid[] and[] advocating for himself and/or taking appropriate action to obtain the payments due to him"); *see Rosas*, 2024 WL 4131905, at *12–13 ("Plaintiffs sufficiently establish Article III standing when they allege that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment."). Accordingly, the Court finds that Plaintiffs' allegations are sufficient to establish standing for Plaintiff Cambisaca's wage notice and statement claims. *See Rosas*, 2024 WL 4131905, at *12–13; *Weller v. Icahn Sch. of Med. at Mount Sinai*, No. 23-CV-4775 (PKC)

(LB), 2025 WL 745992, at *6 (E.D.N.Y. Mar. 7, 2025) (discussing post-*Guthrie* cases concerning the WTPA).

Plaintiffs Caceres, Urgiles, and Paca, however, fail to plead facts showing that they have Article III standing with respect to these claims. More specifically, Plaintiffs Caceres, Urgiles, and Paca fail to allege that their respective injuries are fairly traceable to Defendants' failure to provide wage notices or wage statements. As set forth above, Plaintiffs Caceres and Paca allege that they each "did not receive any pay for [their] last two weeks of work." Compl., ECF 1, ¶¶ 46, 85. Similarly, Plaintiff Urgiles alleges that he "did not receive any pay for his two days of work." *Id.* ¶ 58. Like Cambisaca, these Plaintiffs allege that "[a]s a result of Defendants' failure to provide [them] with a Notice of Pay Rate or accurate Wage Statements with each payment of wages," they were "prevented from" realizing they were underpaid. *See id.* ¶¶ 51, 62, 90. However, this conclusory allegation is not plausible against the factual backdrop of the complaint, where the two longer-term employees, Caceres and Paca, were paid above minimum wage; these Plaintiffs do not allege an entitlement to overtime because they did not work over 40 hours in any given workweek; and, with the exception of their final paycheck, do not allege that they were paid untimely. *See generally id.*; *see Weller*, 2025 WL 745992, at *6 (contrasting cases where plaintiffs have "'plausibly [shown] that defective notices led him or her to lose wages'" (quoting *Guthrie*, 113 F.4th at 310)). Here, these Plaintiffs' injuries appear to stem from not being provided their final paycheck at all; under these circumstances, they have not alleged any non-conclusory facts to explain how wage statements would have enabled them to sooner "advocate for themselves." *See* Compl., ECF 1, ¶¶ 46, 58, 85; *see generally id.* In other words, the complaint does not plead facts from which to plausibly infer that there is a causal connection between lack of wage statements or notices and these Plaintiffs' lost wages.

Absent any allegation of particularized facts supporting these Plaintiffs' assertion of how their harms were fairly traceable to Defendants' failure to provide wage notices and statements, these Plaintiffs have failed to "plead facts that 'plausibly'" show that they have standing with respect to their wage notice and statement claims. *Weller*, 2025 WL 745992, at *6 (quoting *Guthrie*, 113 F.4th at 310); *see Soule ex rel. Stanescu v. Conn. Assoc. of Schs., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) ("'[C]ourts need not credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (internal quotation marks omitted)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (framing the plausibility standard as whether the plaintiff's allegations have "nudged their claims across the line from conceivable to plausible"). Here, the lack of any payment for their employment, rather than the lack of wage notice or statements, appears to be the clear causal link to their alleged harms. *See generally* Compl., ECF 1. Accordingly, the Court recommends that the WTPA claims be dismissed without prejudice as to Plaintiffs Caceres, Urgiles, and Paca.

Statutory damages for wage notice and wage statement violations under the WTPA are collectively capped at $10,000. *See* NYLL §§ 198(1-b), 198(1-d). "Violations of § 195(1) result in damages of $50 per workday, up to a maximum of $5,000, which is reached after 100 [work]days," and "[v]iolations of §195(3) result in damages of $250 per workday, up to a maximum of $5,000, which is reached after 20 [work]days." *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231 (JLR) (SLC), 2024 WL 4751732, at *10 (S.D.N.Y. Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024); *see also Du v. CGS Metal Fabrication, Inc.*, No. 19-CV-1821 (ARR) (TAM), 2022 WL 987316, at *9 (E.D.N.Y. Jan. 14, 2022), *report and recommendation adopted*, Jan. 31, 2022 ECF Order Adopting R. & R.; *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM) (RML),

2021 WL 878743, at *9–10 (E.D.N.Y. Mar. 9, 2021) (calculating WTPA damages owed to the plaintiff based on days worked, rather than total work period); *Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK) (RLM), 2019 WL 1549033, at *12 (E.D.N.Y. Feb. 22, 2019) (calculating WTPA damages based on the plaintiff's total work days), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).

Because Plaintiff Cambisaca has alleged that Defendants continually violated the wage notice and wage statement requirements under the WTPA during the entirety of his employment, including a period of time he worked overtime, Plaintiff Cambisaca has alleged his entitlement to WTPA statutory damages.[14] Given the duration of Plaintiff Cambisaca's employment (which the Court calculates as spanning greater than 100 days based on Plaintiffs' allegations), Plaintiff Cambisaca is entitled to the maximum amount of statutory damages. *See Ortega*, 2024 WL 4751732, at *10.

For the reasons discussed above, the Court recommends awarding WTPA statutory damages to Plaintiff Cambisaca in the amount of **$10,000.00**, consisting of $5,000.00 for violations of NYLL § 195(1) and $5,000.00 for violations of § 195(3).

---

[14] For Plaintiff Cambisaca, the Complaint alleges that he was employed by Defendants "from approximately January 6, 2024 until on or about February 28, 2025, from approximately March 31, 2025 until on or about April 4, 2025 and from approximately May 29, 2025 until on or about June 6, 2025." Compl., ECF 1, ¶ 63. However, the detailed allegations of hours worked per week by Plaintiff Cambisaca do not include the period from January 6 to February 26, 2024. *Id.* ¶¶ 67–68; *see* Damages Chart, ECF 18-4. Indeed, Plaintiffs' calculation of damages begins on February 26, 2024, rather than January 6, 2024. *See* Damages Chart, ECF 18-4. Given the inconsistency in the allegations, the Court calculates Cambisaca's damages starting on February 26, 2024, consistent with Plaintiffs' calculations. *Id.* Regardless, the Court notes that even without considering the omitted time period from January 6 to February 25, 2024, Plaintiff Cambisaca reaches the statutory maximum under the WTPA. *See* Compl., ECF 1, ¶¶ 63, 67.

* * * * *

In summary, the Court respectfully recommends that Plaintiffs be awarded **$12,874.00** in compensatory damages for unpaid wages and overtime (for unpaid wages: **$2,240.00** for Caceres, **$264.00** for Urgiles, **$1,800.00** for Cambisaca, and **$2,720.00** for Paca; for overtime: **$5,850.00** for Cambisaca) and **$10,000.00** in statutory damages under the WTPA for Plaintiff Cambisaca.

### D. Liquidated Damages and Interest

#### 1. *Liquidated Damages*

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employee is also entitled to recover liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). Because a plaintiff cannot obtain a double recovery, courts award liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."); *see, e.g.*, *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). Under these provisions, the Court recommends an award of liquidated damages equal to each Plaintiff's compensatory damages awarded under the NYLL, *i.e.*, **$12,874.00** in compensatory

damages for unpaid wages and overtime (for unpaid wages: $2,240.00 for Caceres, $264.00 for Urgiles, $1,800.00 for Cambisaca, and $2,720.00 for Paca; for overtime: $5,850.00 for Cambisaca).

2. *Prejudgment Interest*

As to Plaintiffs' request for prejudgment interest, "'[i]t is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to the position they would have been in absent the wage-protection violation. *See Fermin*, 93 F. Supp. 3d at 48; *see also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *Begum*, 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose"), *report and recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

Both liquidated damages and prejudgment interest are available under the NYLL "even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor*

*USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013); *see also Calle*, 2017 WL 6942652, at *17 & n.22 (E.D.N.Y. Oct. 24, 2017) (noting that prejudgment interest is appropriate for withheld wages, overtime wages, and spread-of-hours damages, but not for liquidated damages or WPTA statutory damages) (collecting cases), *report and recommendation adopted*, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018). Here, since Plaintiffs are entitled to compensatory damages under the NYLL, the Court finds that they are entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, from "[the] midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quotation marks omitted).

Here, given that the relevant dates of Plaintiff Caceres's employment are August 24, 2024, to August 1, 2025, the midpoint of Plaintiff Caceres's claim period is February 11, 2025. As Plaintiff Urgiles's employment spanned only two days, from August 7 to August 8, 2025, the Court uses August 8, 2025, as the date for when his claim accrued for purposes of calculating prejudgment interest. The relevant dates of Plaintiff Cambisaca's employment for purposes of calculating damages are February 26, 2024, *see*

*supra* note 14, to June 6, 2025, and the midpoint of his claim period is therefore October 16, 2024. Plaintiff Paca's employment spanned July 15 to August 8, 2025, and the midpoint of his claim period is thus July 27, 2025.

For the reasons discussed above, the Court respectfully recommends awarding prejudgment interest under the NYLL on Plaintiffs' compensatory damages awards as follows:

1) For Plaintiff Caceres, prejudgment interest on $2,240.00 from February 11, 2025, through the date judgment is entered at a per diem interest rate of **$0.55** ($2,240 x 0.09 / 365);
2) For Plaintiff Urgiles, prejudgment interest on $264.00 from August 8, 2025, through the date judgment is entered at a per diem interest rate of **$0.07** ($264 x 0.09 / 365);
3) For Plaintiff Cambisaca, prejudgment interest on $7,650.00 ($1,800.00 in unpaid wages and $5,850.00 in unpaid overtime) from October 16, 2024, through the date judgment is entered at a per diem interest rate of **$1.89** ($7,650 x 0.09 / 365); and
4) For Plaintiff Paca, prejudgment interest on $2,720.00 from July 27, 2025, through the date judgment is entered at a per diem interest rate of **$0.67** ($2,720 x 0.09 / 365).

3. *Post-Judgment Interest*

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "'from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board

of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment.'" *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021) (alteration in original) (quoting 28 U.S.C. § 1961(a)), *report and recommendation adopted*, 2021 WL 4205195 (E.D.N.Y. Sept. 16, 2021). In *Fermin*, the court awarded post-judgment interest on all sums awarded pursuant to the plaintiffs' FLSA and NYLL wage-and-hour claims. 93 F. Supp. 3d at 53. The same approach is appropriate here. The court therefore respectfully recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

**IV. Attorneys' Fees and Costs**

**A. Attorneys' Fees**

Under both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorney's fees. *See* 29 U.S.C. § 216(b); NYLL § 663(1). In this circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, awards given in similar cases, and the "experience, reputation, and ability" of the attorney. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 186 n.3, 190 (2d Cir. 2008). Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190; *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166

(2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a presumptively reasonable fee." (quotation marks omitted)). With very limited exceptions, "[a]ll applications for attorney's fees" in this circuit "should normally be disallowed unless accompanied by contemporaneous time records." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quotation marks omitted); *see also Universal Elec.*, 970 F. Supp. 2d at 127. In this district, courts have recently approved the following hourly rates: "$450–$650 for partners, $300–$450 for senior associates, $150–$300 for junior associates, and $100–$150 for paralegals." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 242–43 (E.D.N.Y. 2025) (observing that attorney's fees may be adjusted for inflation).

In this case, Plaintiffs seek $4,105 in attorneys' fees for 13.5 hours worked, billed at $450 per hour for managing partner Michael Faillace, $300 per hour for associate Robert Jun, and $125 per hour for paralegals. *See* Billing Records, ECF 18-5; Mem., ECF 19, at 18. Mr. Faillace represents that he is the "Managing Member" of Michael Faillace & Associates, P.C., having been in practice since 1983. Mem., ECF 19, at 18. As stated above, courts in this district have approved hourly rates for partners at rates between $450 and $650. *See Rubin*, 763 F. Supp. 3d at 242–43. Given Mr. Faillace's experience, the Court respectfully recommends finding that a $450 hourly rate is reasonable for counsel in this case. Likewise, Mr. Jun represents that he is an associate at Michael Faillace & Associates, P.C., who has been in practice since 2014. Given his over 10 years of experience, the Court considers him to be a senior associate and therefore finds his hourly rate of $300 to be reasonable. *See id.* Additionally, an hourly rate of $125 for paralegal work is within the scope of reasonableness contemplated by *Rubin*. *See id.* Moreover, the number of hours billed, 13.5, based on the billing records and scope of

work performed by counsel, is also reasonable given the procedural history of this case. *See* Billing Records, ECF 18-5; *see, e.g.*, *Fermin*, 92 F. Supp. 3d at 52 (finding 22 hours of attorney time and 4.4 hours of paralegal time reasonable in a FLSA/NYLL default action); *Lu Nan Fan*, 2019 WL 1549033, at *15 (finding 25.5 hours "not unreasonable").

Accordingly, the Court recommends an award of **$4,105.00** in attorney's fees.

### B. Costs

"[A]ttorneys' fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Antoine*, 489 F. Supp. 3d at 104 (quotation marks omitted). "Plaintiffs are required to 'submit adequate documentary evidence in support'" of their request for costs. *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 554 (E.D.N.Y. 2025) (quoting *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015)); *see also Tacuri*, 2015 WL 790060, at *14 (collecting cases).

Plaintiffs seek $1,203.00 in costs in this action. Mem., ECF 19, at 18; *see* Billing Records, ECF 18-5. These costs include the $405.00 court filing fee, $498.00 in process server fees, and $300.00 for two affirmations of due diligence. Billing Records, ECF 18-5. The Court may take judicial notice of the $405.00 filing fee. As to the other costs, the Court notes that Plaintiffs have not submitted copies of invoices, receipts or other "adequate documentary evidence" that would substantiate their costs in this action; rather, "[a]ll they have submitted to the Court in support of the service fees [are] notation[s] within Plaintiffs' attorneys' contemporaneous billing records," which are

not sufficient to support their request for costs.[15] *Tacuri*, 2015 WL 790060, at *14; *contrast id.* (recommending that the court deny award for service costs where costs were not documented and collecting cases finding same), *with Prime Contractors Inc.*, 786 F. Supp. 3d at 554 (awarding service costs in light of "invoices documenting these expenditures"). Notwithstanding the evident difficulties in effectuating service of process in this case, as discussed above, the Court respectfully recommends that Plaintiffs' request for costs be granted as to the $405.00 court filing fee, but not the remaining costs, in the absence of documentary evidence to support them.

Accordingly, the Court recommends awarding **$405.00** in costs.

## CONCLUSION

For the reasons discussed above, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted. Plaintiffs have established that Defendants violated (1) the FLSA and the NYLL's minimum wage provisions and (2) the FLSA and the NYLL's overtime provisions. Additionally, as to Plaintiff Cambisaca, Defendants have violated the WTPA's wage notice and statement requirements. With respect to damages, the Court recommends entry of judgment in the following amounts:

[15] On August 1, 2026, the Court issued an order directing Plaintiffs "to submit any supporting documentation as to counsel's application for costs" by August 4, 2026, and noting that "[f]ailure to submit any additional supporting documentation will result in the Court finding that Plaintiffs' counsel's request for undocumented costs has been abandoned." Aug. 1, 2026 ECF Order. No such filing was made by August 4, 2026, and the Court therefore deems the request for costs to be abandoned. *See generally* Docket.

1) For Plaintiff Caceres,

   a. A sum of **$4,480.00**, comprising $2,240.00 in compensatory damages and $2,240.00 in liquidated damages, and

   b. An award of prejudgment interest on Plaintiff Caceres's unpaid wages at a per diem interest rate of **$0.55** from February 11, 2025, to the date final judgment is entered;

2) For Plaintiff Urgiles,

   a. A sum of **$528.00**, comprising $264.00 in compensatory damages and $264.00 in liquidated damages, and

   b. An award of prejudgment interest on Plaintiff Urgiles's unpaid wages at a per diem interest rate of **$0.07** from August 8, 2025, to the date final judgment is entered;

3) For Plaintiff Cambisaca,

   a. A sum of **$25,300.00**, comprising $7,650.00 in compensatory damages, $10,000.00 in statutory damages, and $7,650.00 in liquidated damages, and

   b. An award of prejudgment interest on Plaintiff Cambisaca's unpaid wages at a per diem interest rate of **$1.89** from October 16, 2024, to the date final judgment is entered; and

4) For Plaintiff Paca,

   a. A sum of **$5,440.00**, comprising $2,720.00 in compensatory damages and $2,720.00 in liquidated damages, and

   b. An award of prejudgment interest on Plaintiff Paca's unpaid wages at a per diem interest rate of **$0.67** from July 27, 2025, to the date final judgment is entered.

The Court also recommends that Plaintiffs be awarded **$4,510.00**, comprising **$4,105.00** in attorneys' fees and **$405.00** in costs. The Court further recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a). Finally, the Court recommends that Plaintiffs be awarded a 15 percent increase in damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within 90 days of judgment or the expiration of time to appeal, whichever is later.[16]

* * * * *

This report and recommendation will be filed electronically and a copy sent by mail to defaulting Defendants. As a courtesy, the Court also respectfully directs Plaintiffs to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by August 12, 2026. Objections to this report and

---

[16] The New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *11–12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See Rodriguez*, 2018 WL 7252949, at *12 (recommending that the 15 percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021) (citing *Rodriguez* and limiting conditional 15 percent increase to damages awarded under the NYLL), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021). Accordingly, Plaintiffs' damages under the NYLL should be increased by 15 percent for any amounts unpaid after 90 days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (recommending that the total amount of the judgment automatically increase if any amount remained unpaid upon the expiration of 90 days following issuance of the judgment), *report and recommendation adopted*, Dec. 12, 2017 ECF Order Adopting R. & R.

recommendation must be filed, with a courtesy copy sent to the Honorable Rachel P. Kovner at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal before both the district court and appellate courts. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
August 7, 2026

Taryn A. Merkl
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE